## PROSECUTION UNDER COUNTY LOCAL OPTION LAW.

Common Pleas Court of Coshocton County.

DANIEL LAMMA v. THE STATE OF OHIO.

Decided, January, 1909.

*Criminal Law—Violation of County Local Option Law—When Affidavit Charging Violation is Sufficient—"Furnishing" as Used in the Statute—Intoxicating Liquor is Furnished as a "Beverage," When —Maximum Penalty Warranted, When—Error to Proceedings Before a Mayor.*

1. An affidavit charging violation of the county local option law is sufficient, when it avers that the defendant, at a time and place named, did then and there furnish intoxicating liquors as a beverage to a person named, and that the furnishing of said intoxicating liquor by defendant as aforesaid was then and there prohibited and unlawful.

2. The word "furnishing," as used in this act, should be given a broad meaning for the purpose of carrying out the will of the people as expressed at the ballot box; and when it appears that the defend-

ant authorized one of the witnesses in the case to dispose of liquor which he had on hand by sale, and the witness did so dispose of it to be used as a beverage, it is not error to refuse to discharge the defendant at the conclusion of the state's evidence.

3. When intoxicating liquor is furnished for any other than a legitimate legal purpose, it is furnished for use as a "beverage."

4. Where the defense is without merit and clearly indicates that it has been manufactured, the imposing of a maximum penalty does not afford ground for setting aside the judgment on the ground that the sentence is excessive.

NICHOLAS, J.

This cause comes into this court upon an application by the plaintiff in error for leave to file a petition in error to this court from the mayor's court of the city of Coshocton. The statute requires that in cases of this kind the petition shall only be filed upon notice and hearing. It therefore becomes the duty of this court to look into the record of the mayor's court, and the assignments of error by the plaintiff in error, to discover whether or not there are grounds for the filing of such petition, and in doing this I have made my examination as thorough as I could have done if the hearing had been upon a petition in error and bill of exceptions, the same having been filed under the general statute which does not require an allowance before filing.

An examination of the record discloses that this was a prosecution of the defendant below, charging him with violation of the county local option law, passed March 5, 1908, and found on pages 35 *et seq.* of the 99th Ohio laws, the affidavit in the case charging him with having furnished intoxicating liquors to one Edward Stewart on or about December 1, 1908, in the city of Coshocton, Coshocton county, Ohio.

The first error assigned by the plaintiff in error is that the court erred in not sustaining defendant's motion to quash the affidavit filed in the case. The affidavit is in substance as follows: That on or about December 1, 1908, in the city of Coshocton, Coshocton county, Ohio, this defendant did then and there furnish intoxicating liquors as a beverage to one Edward Stewart; that the furnishing of intoxicating liquors as aforesaid by the defendant was then and there prohibited and unlawful.

Under the general practice it would probably be at once conceded that such an affidavit would hardly be sufficient, but in Section 5 of the said act of March 5, 1908, the Legislature has provided that—

"In indictments, affidavits or information for violation of this act, it shall not be necessary to set forth the facts showing that the required number of electors in the county petitioned for an election and that the election was held, or that the majority voted in favor of prohibiting the sale as herein provided; but it shall be sufficient to state that the act complained of was then and there prohibited and unlawful."

In other words, under this section of the act it is only necessary to set out the conduct of the defendant complained of, the time and place of its commission, the person to whom the intoxicating liquors were furnished, and the further allegation that the same was prohibited and unlawful, and this I find the affidavit contains. I therefore fail to find any error on the part of the mayor in refusing to quash the information.

The second assignment of error is that the court erred in not sustaining the defendant's motion to dismiss said cause at the time the State rested, and in not discharging the defendant. This assignment raises for the first time, among the many assignments of error, the most important and troublesome question found in the investigation of this case. The act of the defendant complained of in the affidavit is the furnishing to Stewart of intoxicating liquors as a beverage within prohibited territory. The testimony in support of this complaint as introduced by the State discloses this state of facts: That in the home of this defendant there was kept a considerable quantity of intoxicating liquors, described by the witnesses for the State as whiskey. That whiskey is an intoxicating liquor has been many times judicially decided by the courts of our various states. This liquor was kept in the home of this defendant for some purpose, the amount thereof being largely in excess of the amount kept by the ordinary citizen for his own personal consumption, and kept too in vessels of such size as not ordinarily used for that purpose. The witness Stewart says that he was authorized by this defendant to dispose of this liquor by sale,

This fact, of course, at this period in the testimony was not yet disputed by the defense.

The testimony further discloses that Stewart did dispose of some of this liquor, particularly that sold to Frederick, and quite probably to some others. It is not disclosed by the testimony, however, that the liquor was furnished by this defendant to Stewart to be used by Stewart personally as a beverage. The question therefore arises, what is the legal meaning of the word "furnish" as used in that statute.

Our own Supreme Court, in the 25th Ohio State, has held that, "where an adult purchases two drinks of whisky at a counter, takes one himself and passes the other to a minor, that the saloon keeper may be convicted of furnishing intoxicating liquor to a minor," upon the theory that though the adult bought and paid for the liquor for the minor, the bartender is guilty of furnishing, but in this state no broader signification has yet been attached to that word, and we must therefore look elsewhere for a more comprehensive definition of it.

In the 27th Vermont, at page 520, in *State* v. *Freeman*, I find this language:

"The word 'furnish' would include both selling and giving away *and every other mode of putting spirits in the power of another.* Selling seems to be one distinct mode of offense by itself. Furnishing was intended only to include such furnishing as was done by dealers in the article where it was not in terms sold. It may include other modes of affording it to others beside giving away, but clearly does include this."

In the 85th Mich., at page 98, in the case of the *People* v. *Neumann*, that court say:

"The word 'furnishing' in the statute making the furnishing of intoxicating liquors to minors a crime, is somewhat broader than the word 'giving' and means letting a minor have liquor, and therefore a saloon keeper who without protest allows an adult to buy intoxicating liquor and give it to the minor to drink, is guilty of violation of the statute."

And in the 77th Ga., at page 738, in *Dukes* v. *State*, that court say:

"Selling or furnishing liquor within the meaning of the statute making it a crime to sell or furnish intoxicating liquor, in-

cludes the selling or giving away of a quantity of whiskey for the use of a sick person.''

It will be seen that this expression ''furnishing'' is the broad, comprehensive term used to describe any mode of putting spirits in the power of another, and as I read and understand the purpose ·in the minds of the Legislature when they passed this law, I am impressed with the idea that they intended to give to this word its most catholic meaning—that meaning which the Supreme Court of Vermont gave to it for the very purpose of executing and carrying out the will of the people as expressed at the ballot box.

I therefore find that there was no error committed by the court below in refusing to discharge this defendant upon the motion filed when the State rested its case.

As to the third and' fourth assignments that the court erred in admitting evidence on behalf of the State and rejecting evidence offered ·by the defendants, I fail to find anything therein prejudicial to the rights of this defendant.

The fifth assignment is that the judgment and finding of the court was contrary to the evidence. This assignment raises the question of the 'weight of the evidence. What I have already said will sufficiently indicate that there was sufficient evidence offered by the State to justify the conviction of this defendant. And now, has the testimony offered by the defendant so weakened that testimony as· to. require at the hands of the court below an acquital? I most certainly think not, and I have no hesitation in saying that in all the criminal cases in my experience on the bench and at the bar, covering a period of more than a quarter of a century, I have never seen a defense which bore more unmistakably the evidence of manufacture than does this one.

Assuming that this defendant actually bought or in· any wise obtained the quantity of liquor which he says he did just before this county went dry, what was his object in so doing? Can any one believe that a man in his financial condition, living with his little family in quarters such as he occupied, with no more means than he had, would purchase so large a quantity of liquor for his own personal use; and if he did, it would then

have been his duty to have safe-guarded it against its being used in violation of the law, and, moreover, what was meant by the expression of his wife to him on the night of his arrest that "if he had done as she wanted him to this trouble would not have occurred." The story of emptying one of these jugs for buttermilk is too unskillfully planned to mislead any one, and was only manufactured because they both saw the necessity of making some explanation for keeping liquor in small bottles instead of jugs. The story hasn't even the semblance of truth behind it, and instead of weakening the case as made by the State, it only tended to strengthen and fortify the claim as made by the State and the story as told by the witness Stewart, that this private house had been converted into a store house for "boot-legging" and this defendant was furnishing liquor for distribution by a "boot-legger" as a beverage.

Using intoxicating liquor as a beverage means something more than the mere using of it as a drink. It, like the word "furnish," has a broader, more comprehensive meaning than is sometimes given to it.

In the 142d Mass., at page 469, in *Commonwealth* v. *Mandeville*, the court say:

"The use of liquors as a beverage does not mean simply that the same is to be drunk, but the word 'beverage' is used to distinguish the act of drinking liquor for the mere pleasure of drinking from its use for medicinal purposes."

So that if this liquor was furnished for any other than a legitimate legal purpose, it was being furnished as a beverage, and it is not claimed in this defense that this defendant was dispensing it with any medicinal object in view.

I therefore fail to find that the finding of the court below was contrary to the evidence.

The sixth error assigned, that the judgment and finding of the court is contrary to the law and the evidence, has been fully answered in what I have said with reference to the prior findings.

The seventh assignment is that the sentence of the court and fine imposed is excessive. By reference to the record, I find that the court imposed the penalty of $200 and the costs of the prosecution, and in default the commitment of the defendant

to the Columbus work house. This is the heaviest penalty authorized by the statute, and when I consider that this defense was absolutely bereft of merit, that in addition thereto this defendant called his own wife as a witness, and had her lend her name to this tissue of falsehood, and permitted her to cover herself with shame in the story which she told, I can only feel that the Legislature probably limited the officer in the fixing of this penalty by limits too narrow to mete out a proper punishment.

There, was therefore, no imposition of an excessive penalty. In the full examination of this record I find no error. The application, therefore, for leave to file a petition in error is refused.